UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARVIN DEARING,<br>Plaintiff,<br><br>vs.<br><br>FRED DENNY, et al.,<br>Defendants. | Case No. 1:16-cv-970<br>Dlott, J.<br>Litkovitz, M.J.<br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff Marvin Dearing, an inmate at the Southern Ohio Correctional Facility ("SOCF") proceeding pro se, filed this prisoner civil rights action under 42 U.S.C. § 1983 alleging that defendant SOCF employees Fred Denny, Larry Green, and Walter Sammons retaliated against him in violation of the First Amendment for exercising his right to participate in a hunger strike. (Doc. 3). This matter is before the Court on plaintiff's motion for summary judgment (Doc. 18) and defendants' response in opposition (Doc. 27), as well as defendants' motion for summary judgment (Doc. 28), plaintiff's response in opposition (Doc. 31), and defendants' reply memorandum (Doc. 35). This matter is also before the Court on plaintiff's motion for leave to file a supplemental complaint (Doc. 26) and defendants' response in opposition (Doc. 33).

## I. Background

Plaintiff filed his complaint on October 20, 2016. (Doc. 3). That same day, this Court conducted a *sua sponte* review under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and concluded by Report and Recommendation that plaintiff could proceed with his § 1983 claims against defendants for their participation in a disciplinary sanction allegedly imposed in violation of, or in retaliation for, plaintiff's exercise of his First Amendment rights, but dismissed all other claims. (Doc. 5). On November 30, 2016, the District Court adopted the Report and Recommendation. (Doc. 10). Plaintiff filed his motion for summary judgment on March 9,

2017 (Doc. 18) and defendants filed their counter motion for summary judgment on June 21, 2017 (Doc. 28).

**II. Facts**

The parties do not dispute the relevant facts, but rather dispute the resolution of the legal questions at issue. (*See* Doc. 18; Doc. 28 at 3). Therefore, the Court will summarize the relevant facts altogether.

On June 9, 2016, defendant Denney issued plaintiff a conduct report for violating Rule 16 of the Ohio Administrative Code, which prohibits inmates from "engaging in or encouraging a group demonstration or work stoppage." (Doc. 18-2 at 1; Doc. 28 at 3, 5); Ohio Admin. Code § 5120-9-06(C)(16). The conduct report states as follows:

> Please be advised that this conduct report is being written due to letters that have been recently stopped by our mail room here at SOCF for possible security concerns. These letters were turned over to this office (STG) for review. Inmate Dearing #421-030 sent a letter to Inmate McCree #510-216 voicing his opinion of excessive solitary confinement here at SOCF. He states that Inmates that have been ticket free and that meet the point criteria to reduce in security are being denied transfer which constitutes cruel and unusual punishment. Inmate Dearing then states to Inmate McCree to get his young brothers together as he is declaring a hunger strike and states that "We have to do this sit down."

(Conduct Report, Doc. 18-2 at 1.).

The conduct report also cited plaintiff for sending a letter to another inmate and writing that "[the inmate] needs to get all of his guys ready to go on a hunger strike after store day." (Conduct Report Supplement, *Id.* at 2). The conduct report also states: "Let it be known that Inmate Dearing #421-030 is attempting to encourage this group demonstration on behalf of other Inmates and not because of anything allegedly denied to him as he is not eligible for a security reduction until December of this year." (*Id.*).

2

On June 17, 2016, the Rules Infraction Board found plaintiff guilty of violating Rule 16 because "[t]he panel does believe that the I/M did attempt to get other I/M's to have a sit down and go on a hunger strike." (*Id.* at 3). As a result, plaintiff received the following disposition: "15 days D/C in date 6-17-16 out date 7-1-16 remain 4A." (*Id.*). Plaintiff appealed the decision of the Rules Infraction Board to the warden on June 21, 2016, arguing that "inmates have a right to participate in peaceful protest." (*Id.* at 10). The warden affirmed the decision of the Rules Infraction Board that same day, stating that plaintiff was "charged with a proper rule infraction; There were no prejudicial violations of [plaintiff's] rights; The record contained some evidence; The penalty imposed was authorized." (*Id.* at 11).

### III. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

3

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp.2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

4

## IV. Exhaustion of Administrative Remedies

### A. Legal Standard

Exhaustion of administrative remedies "is mandatory under the [Prison Litigation Reform Act ("PLRA")] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.* Because defendants bear the burden of persuasion on exhaustion, their "initial summary judgement burden is 'higher in that [they] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455-56 (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (in turn quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000))).

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "To properly exhaust a claim,

5

prisoners must tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member within fourteen days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(K)(1). Second, if the inmate is unsatisfied with the response to his informal complaint he may file a formal grievance with the inspector of institutional services at his institution of confinement. Ohio Admin. Code § 5120-9-31(K)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within fourteen calendar days of receipt of the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the office of chief inspector of the Ohio Department of Rehabilitation and Correction ("ODRC") within fourteen days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(K)(3).

## B. The Parties' Arguments

Defendants argue that plaintiff failed to exhaust his administrative remedies as to his First Amendment retaliation claim because he completed only the first of three steps required under Ohio law. (Doc. 28 at 14).

In response, plaintiff contends that defendants' exhaustion argument is without merit because after he filed his initial informal complaint, on June 27, 2016, he "sent a kite to the inspector requesting a grievance." (Doc. 31 at 10). In the "kite," which plaintiff attaches as an exhibit in his response in opposition to defendants' motion for summary judgment, plaintiff writes: "Informal complaint filed violation of hunger strike Policy/Retaliation. Please send grievance." (Exh. G, Doc. 31-1 at 8). On June 28, 2016, the inspector responded to the "kite" and wrote: "As you were told conduct reports are not grievable per AR 5120-9-31." (*Id.*).

In reply, defendants assert that plaintiff's informal complaint resolution "conflates the grievable issue [of] an officer limiting his speech rights, and the non-grievable issue of his misconduct violation." (Doc. 35 at 3). Defendants contend that "[p]laintiff should have clarified and partitioned those issues he wished to grieve; however, he obfuscated his grievance so that the Inspector's Office was unable to assist him properly." (*Id.*). Further, defendants argue that "the response to Plaintiff's Informal Complaint Resolution indicates that Plaintiff failed to follow proper grievance procedure" by "directing his complaint to the warden rather than the appropriate supervisor." (*Id.*).

## C. Resolution

On June 19, 2016, plaintiff initiated the grievance procedure by submitting an informal complaint concerning defendants' alleged violation of his First Amendment rights when they disciplined him for planning a group hunger strike. (*See* Informal Complaint Resolution, Doc.

7

28-1 at 3). The response to this informal complaint was dated June 21, 2016 and noted that plaintiff failed to "follow [the] procedure as per AR 5120-9-31" and failed to address his complaint to the RIB appeals and to the appropriate supervisor, not the warden. (*See id.*). After receiving the response to this informal complaint, plaintiff did not file any grievances against defendants. (Declaration of Eugene Hunyadi, Doc. 28 at 20, ¶ 11). Instead, he filed this lawsuit on October 20, 2016. (*See* Doc. 3).

Eugene Hunyadi, an assistant chief inspector with the ODRC, attests that plaintiff filed seven informal complaints and one grievance between June 2016 and December 2016. (Hunyadi Declaration, Doc. 28 at 20, ¶ 9). Mr. Hunyadi attests that the informal complaint dated June 19, 2016 concerns defendants Denney, Greene, and Sammons and the allegations against them in this lawsuit. (*Id.*, ¶ 10). Defendants have submitted a copy of plaintiff's institutional grievance history, which Mr. Hunyadi certifies to be true and accurate. (*Id.*, ¶ 13; Inmate Grievance History for Marvin Dearing, Doc. 28-1 at 2-3). The grievance history shows that while plaintiff did not submit a formal grievance regarding the incidents at issue in this lawsuit, he submitted formal grievances in the past related to other complaints. (*See* Doc. 28-1 at 1-2). Specifically, the grievance history shows that on nine other occasions within the past two years, including after the June 2016 incident, plaintiff was able to submit formal grievances concerning other issues.

On this record, defendants have submitted evidence of non-exhaustion that "no reasonable jury would be free to disbelieve." *Surles*, 678 F.3d at 455-56. Based on the Hunyadi declaration, the copy of plaintiff's grievance history, and plaintiff's own admission in response to defendants' motion for summary judgment that he only submitted an informal complaint, no reasonably jury would find that plaintiff exhausted his administrative remedies.

Nevertheless, plaintiff notes that after filing an initial informal complaint on the matter, he requested a grievance form from the institutional inspector, but the inspector failed to provide him with a grievance form and instead noted that conduct reports are "not grievable." (Exh. G, Doc. 31-1 at 8). Thus, the Court must determine whether plaintiff's failure to exhaust should be excused based on the inspector's response to plaintiff's request for a grievance form.

Even if prison officials meet their burden of establishing non-exhaustion, summary judgment may be denied if a prisoner "has demonstrated that a genuine issue of material fact exists as to whether [defendants] improperly prevented [him] from exhausting his administrative remedies." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014). A prisoner who simply alleges that prison officials did not provide him with the proper forms to follow administrative procedures does not demonstrate a genuine issue of material fact that he was prevented from exhausting his administrative remedies. *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001). Rather, a prisoner must present evidence "that there was no other source for obtaining a grievance form or that he made [another] attempt to obtain a form or to file a grievance without a form." *Id. See also Willis v. Mohr*, No. 1:11-cv-808, 2013 WL 1281634, at *3 (S.D. Ohio Mar. 26, 2013) (reiterating that plaintiff must show that his remedies were unavailable because defendants thwarted his efforts to follow administrative procedures, not merely that the defendants did not provide him with the necessary forms), *report and recommendation adopted*, 2013 WL 5773932 (S.D. Ohio Oct. 24, 2013); *Kennedy v. Wurth*, 36 F. App'x 553, 554 (6th Cir. 2002) ("[t]his Court has held that it is inadequate for a prisoner to allege that he was denied a form for a grievance . . . he must show that he attempted to file a grievance without the form"); *Martin v. Johnson*, 72 F. App'x 256, 257-58 (6th Cir. 2003) (same).

9

Here, plaintiff has alleged no more than the fact that the inspector failed to provide him with a grievance form. Although plaintiff has presented evidence of the "kite" that he sent to the inspector requesting a grievance form, to which the inspector responded that conduct reports are "not grievable," such evidence does not create a genuine issue of material fact to call into question defendants' evidence of non-exhaustion. (Exh. G, Doc. 31-1 at 8). Plaintiff has not presented any evidence that he made another attempt to file the grievance or file a grievance without the necessary form. As defendants contend, plaintiff made no effort to clarify that his grievance was specifically related to the alleged violations of his First Amendment rights as a result of planning a hunger strike and not to the issuance of the conduct report. On these facts, the Court cannot conclude that plaintiff's failure to exhaust his administrative remedies should be excused.

Consistent with the foregoing, plaintiff's claims should be dismissed without prejudice for failure to exhaust his administrative remedies. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2006) (citing *Knuckles El v. Tooms*, 215 F.3d 640, 642 (6th Cir. 2000)) ("A dismissal under §1997e should be without prejudice."). However, in the event that the recommendation on the exhaustion issue is not adopted, the Court will also consider the parties' summary judgment motions on the merits of plaintiff's First Amendment retaliation claim.

## V. First Amendment Retaliation

### A. Legal Standard

A prisoner seeking to establish a First Amendment retaliation claim must show that (1) he was engaged in protected conduct; (2) the defendant took an adverse action that was capable of deterring a person of "ordinary firmness from continuing to engage in that conduct"; and (3) "the adverse action was motivated at least in part by the [prisoner's] protected conduct." *Hill v.*

10

*Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)). Inmates retain First Amendment rights that are not "inconsistent with [their] status[es] [as] prisoner[s] or with the legitimate penological objectives of the corrections system." *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). As such, inmate speech is unprotected by the First Amendment when "made in a manner incompatible with the institution's legitimate penological objectives." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014).

In determining whether a prison regulation which impinges on an inmate's First Amendment right is "reasonably related to legitimate penological objectives," courts should consider: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *See also Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (an inmate's First Amendment claim is analyzed under the framework set forth in *Turner*). Moreover, when a prisoner "violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one [of the First Amendment retaliation framework]." *Smith*, 250 F.3d at 1037 (quoting *Thaddeus-X*, 175 F.3d at 395). Further, as frequently noted by the Supreme Court and the Sixth Circuit, courts must accord prison administrators deference in the "adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to

maintain institutional security." *Meadows v. Hopkins*, 713 F.2d 206, 209 (6th Cir. 1983) (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

**B. The Parties' Arguments**

Defendants argue that plaintiff was not engaged in conduct protected by the First Amendment because his letters to fellow inmates "violated a legitimate prison rule designed to maintain prisoner order." (Doc. 28 at 8).[1] Defendants also argue that the finding of plaintiff's guilt "obviates his retaliation claim" because the Sixth Circuit has held that "[a] finding of guilt on a misconduct charge based on some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" (*Id.*) (quoting *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005).

In response, plaintiff argues that defendants' motion for summary judgment should be denied because "defendants hindered, and punished [him] for attempting to excersise [sic] the First Amendment." (Doc. 31 at 5). In both his motion for summary judgment and response in opposition to defendants' motion for summary judgment, plaintiff maintains that hunger strikes are protected conduct under the First Amendment right to assemble and defendants placed him in solitary confinement for engaging in such protected conduct. (*Id.* at 6-7; Doc. 18 at 7-11). Plaintiff also maintains that ODRC has a policy that "allows inmates to peaceably assemble hunger strike." (Doc. 31 at 7).

**C. Resolution**

Defendants' motion for summary judgment should be granted on plaintiff's First Amendment retaliation claim. The undisputed evidence submitted by plaintiff in his own motion for summary judgment shows that defendants disciplined plaintiff for sending letters

---

[1] In their motion for summary judgment, defendants solely address the "protected conduct" element of a First Amendment and state that they "reserve the right to fully address the entirety of Plaintiff's retaliation argument, if it is deemed necessary." (Doc. 28 at 7).

encouraging his fellow inmates to participate in a collective hunger strike and "sit down." (Conduct Report and Conduct Report Supplement, Doc. 18-2 at 1-2). However, as a matter of law, plaintiff cannot establish a constitutional violation based on these facts.

Plaintiff cannot establish the first prong of his retaliation claim: that he was engaged in conduct protected by the First Amendment. Plaintiff argues that although he was found guilty of violating Rule 16 (Ohio Admin. Code § 5120-9-06(C)(16)), the rule only addresses work stoppages and does not encompass hunger strikes. (Doc. 31 at 8). Contrary to plaintiff's argument, Rule 16 prohibits "[e]ngaging in or encouraging a group demonstration" in addition to "work stoppages." Ohio Admin. Code § 5120-9-06(C)(16). Moreover, to the extent plaintiff disagrees with defendants' decision that soliciting other inmates to participate in a collective hunger strike constitutes "engaging in or encouraging a group demonstration," the Court is mindful of the deference it owes to the judgment of prison officials when it comes to maintaining order and security in a prison setting. *See Turner*, 482 U.S. at 90 ("courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation.'") (quoting *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 131 (1977)).

The rule prohibiting inmates from "engaging in or encouraging a group demonstration" is reasonably related to the legitimate goal of institutional security and order. Ohio Admin. Code § 5120-9-06(A), (C)(16). Defendants have a legitimate penological objective in preserving institutional order and security by forbidding prisoners from soliciting participation in a hunger strike and "sit down" under Rule 16 of the Ohio Administrative Code. *See Turner*, 482 U.S. at 90, 93. *See also N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 132 (holding that an inmate's "status as a prisoner" and the "operational realities of a prison dictate restrictions on the

associational rights among inmates"); *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003) (holding that a prison regulation prohibiting visitation by former inmates did not violate the First Amendment in light of the state's interest in maintaining prison security and emphasizing that "communication with other felons is a potential to spur criminal behavior.") (quoting *Turner*, 482 U.S. at 91-92); *Colar v. Heyns*, No. 1:12-cv-1269, 2013 WL 141138, at *2 (W.D. Mich. Jan. 11, 2013) (dismissing prisoner's First Amendment freedom of association and assembly claim and stating that the "[t]he Supreme Court has repeatedly recognized that freedom of association and assembly are among the rights least compatible with incarceration.") (citing *Overton*, 539 U.S. at 131; *Hewitt v. Helms*, 459 U.S. 460 (1983)). Accordingly, plaintiff's actions – soliciting his fellow inmates to participate in a collective hunger strike and "sit down" – are not protected under the First Amendment. *See Turner*, 482 U.S. at 89.

Plaintiff also contends that the discipline he received is contrary to an ODRC policy that permits inmates to engage in a hunger strike as a form of protest. (Doc. 18-2 at 12-13; Doc. 31-1 at 7). However, the policy cited by plaintiff addresses the appropriate medical response to be taken by prison officials when an inmate declares a hunger strike. (*Id.*). It does not condone or address the type of group activity that plaintiff advocated by soliciting a collective hunger strike and "sit down" among his fellow inmates. He was not disciplined for engaging in a hunger strike himself, but for advocating and promoting a group demonstration or work stoppage ("sit down"). Thus, the policy cited by plaintiff does not turn his actions into "protected conduct" under the First Amendment.

In addition, the restriction against encouraging a collective hunger strike and "sit down" leaves open numerous alternate means by which plaintiff may exercise his First Amendment rights and voice his opinion on prison policies. While defendants have restricted plaintiff from

14

soliciting fellow inmates to participate in a hunger strike, plaintiff has not shown he has been prohibited from engaging in a hunger strike on his own or from associating with his fellow inmates in a way that does not threaten the security and order of the institution. *See Colar*, 2013 WL 141138, at *4. Further, as outlined above, the Ohio Administrative Code provides a three-step grievance process for resolving inmate complaints, including plaintiff's complaint concerning excessive solitary confinement at SOCF. Pursuant to *Turner* and its progeny, plaintiff has not established that his conduct in soliciting a collective hunger strike and "sit down" is protected by the First Amendment. Moreover, because plaintiff was found guilty of violating a legitimate prison regulation, he has not established that he engaged in protected conduct under the First Amendment and therefore cannot proceed past step one of the retaliation analysis. *See Smith*, 250 F.3d at 1037. Accordingly, summary judgment for defendants is appropriate on plaintiff's First Amendment retaliation claim.[2]

## VI. Motion to File Supplemental Complaint

Plaintiff moves to file a supplemental complaint pursuant to Fed. R. Civ. P. 15. (Doc. 26). Rule 15(a) governs amendments to the pleadings. Courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a plaintiff should not be granted leave to amend the complaint when the proposed amendment would be futile. *See Brumbalough v.*

---

[2] Defendants also argue that they are entitled to qualified immunity on plaintiff's First Amendment claim and Eleventh Amendment immunity as to plaintiff's claims against them in their official capacities. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court need not address whether defendants are entitled to qualified immunity because the record shows there is no genuine dispute that defendants did not violate plaintiff's First Amendment rights, and defendants are therefore entitled to summary judgment. Further, the Eleventh Amendment bars any form of relief against a State unless the State has waived its sovereign immunity. *See Seminole Tribe of Fla v. Fla.*, 517 U.S. 44, 58 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 654 n.8 (6th Cir. 2007). Damages actions against state officers in their official capacities count as lawsuits against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Court need not address whether defendants are entitled to Eleventh Amendment immunity as to any official capacity claims because the record shows there is no genuine dispute that defendants did not violate plaintiff's First Amendment rights, and defendants are therefore entitled to summary judgment.

*Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (in deciding whether to grant leave to amend, the Court should consider futility of amendment).

Plaintiff's motion for leave to file a supplemental complaint should be denied as futile. Plaintiff seeks to add a similar First Amendment retaliation claim against two new defendants. These defendants allegedly disciplined plaintiff when he "attempt[ed] to facilitate a peaceful protest, namely, (hunger strike)" among the inmates in L-1 Block at SOCF in April 2017. (Doc. 26-1 at 5). For the reasons discussed above, it would be futile to permit plaintiff to supplement his complaint to allege another First Amendment retaliation claim for encouraging a collective hunger strike among his fellow inmates in violation of, inter alia, Rule 16 because such action does not constitute "protected conduct" under the First Amendment. (Doc. 26-1 at 10).[3] Therefore, the undersigned recommends that plaintiff's motion to supplement his complaint be denied.

**VII. Conclusion**

Based on the foregoing, it is **RECOMMENDED** that:

1. Plaintiff's motion for summary judgment (Doc. 18) be **DENIED**; and

2. Defendants' motion for summary judgment (Doc. 28) be **GRANTED**; and

3. Plaintiff's motion to file a supplemental complaint (Doc. 26) be **DENIED**.

Date: 12/4/17

Karen L. Litkovitz
United States Magistrate Judge

---

[3] Plaintiff was charged with violating numerous other rule violations in addition to Rule 16. (Doc. 26-1 at 10).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARVIN DEARING.,
Plaintiff,

vs.

FRED DENNY, et al.,
Defendants.

Case No: 1:16-cv-970
Dlott, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).